UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOANNA KRUPA, | : |
| Plaintiff, | : |
| v. | : C.A. No. |
| BANC, JACK & JOE LLC d/b/a TITILLATIONS GO-GO BAR a/k/a TITILLATIONS; JOSEPH CAREM; JACK PERO and BANC PERO, | : **COMPLAINT** |
| | : **(Jury Trial Demanded)** |
| Defendants. | : |

Plaintiff JOANNA KRUPA, ("Plaintiff"), file this Complaint against BANC, JACK & JOE LLC, d/b/a TITILLATIONS GO-GO BAR a/k/a TITILLATIONS; JOSEPH CAREM; JACK PERO; and BANC PERO (collectively, "Defendants") respectfully alleges as follows:

## BACKGROUND

1. This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiff, who is a well-known professional model, to promote their strip club, Titillations Go-Go Bar a/k/a Titillations located at 12 Willow Street, Bloomfield, New Jersey 07003 (**hereinafter referred to as the "Strip Club" or "Titillations"**).

2. As detailed below, Defendants' misappropriation and unauthorized use of Plaintiff's images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising; c) Misappropriation of Likeness; d) Unfair Competition/False Endorsement N.J.S.A. 56:4-1, et.seq.; e) Negligence/Respondeat Superior; and f) Unjust Enrichment.

3. In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiff likewise seek an Order from this Court permanently enjoining Defendants from using any

1

of their Images in any way and through any medium.

## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff has stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5. This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6. Plaintiff is, and at all times relevant to this action have been, professional models who reside throughout the United States.

7. According to publicly available records, Defendant BANC, JACK & JOE LLC, is a limited liability company formed under the laws of the state of New Jersey, with its principal place of business located at 6-12 Willow St, Bloomfield, New Jersey, 09666. Upon information and belief, BANC, JACK & JOE LLC operates TITILLATIONS GO-GO BAR, which is located at 12 Willow Street, Bloomfield, New Jersey 07003..

8. According to publicly available records, Defendant Joseph Carem, is an individual operating under the laws of New Jersey, who is an Owner and/or Officer of BANC, JACK & JOE LLC. Upon information and belief, Joseph Carem can be located at 20 Hawthorne Terrace, Saddle River, New Jersey 07458.

9. According to publicly available records, Defendant Jack Pero, is an individual operating under the laws of New Jersey, who is an Owner and/or Officer of BANC, JACK & JOE LLC. Upon information and belief, Jack Pero can be located at or 118 Oak St, Riverdale, New Jersey 08089.

10. According to publicly available records, Defendant Banc Pero, is an individual operating under the laws of New Jersey, who is an Owner, Officer and/or CEO of BANC, JACK & JOE LLC. Upon information and belief, Banc Pero can be located at or 12 Willow St, Bloomfield, New Jersey 07003.

11. Venue is proper in the United States District Court for the District of New Jersey because Defendants' principal place of business is located in Essex County, New Jersey.

12. A significant portion of the alleged causes of action arose and accrued in Bloomfield, New Jersey and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Bloomfield, New Jersey.

## PARTIES

*Plaintiff*

13. Plaintiff Joanna Krupa ("Krupa") is a well-known professional model, and a resident of Los Angeles County, California.

*Defendants*

14. Defendant, BANC, JACK & JOE LLC, is a limited liability company formed under the laws of the state of New Jersey and registered to conduct business in New Jersey. During times relevant to this action, BANC, JACK & JOE LLC operated TITILLATIONS GO-GO BAR.

15. According to publicly available records, Joseph Carem, in their capacity as principal, Owner and/or Officer of BANC, JACK & JOE LLC, maintained operational control over Titillations including all advertising relating thereto.

16. According to publicly available records, Jack Pero, in their capacity as principal, Owner and/or Officer of BANC, JACK & JOE LLC, maintained operational control over Titillations including all advertising relating thereto.

17. According to publicly available records, Banc Pero, in their capacity as principal, Owner, Officer and/or CEO of BANC, JACK & JOE LLC, maintained operational control over Titillations including all advertising relating thereto.

18. Service of process may be perfected upon Defendant BANC, JACK & JOE LLC by serving the registered agent for service of process, A. Souflis, who can be located at 406 Cedar Lane, Teaneck, New Jersey 07666.

## FACTUAL ALLEGATIONS

19. Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

20. Plaintiff's career in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiff is necessarily selective concerning the companies, and brands, for which they model.

21. Each of the Plaintiff's Images was misappropriated, and intentionally altered, by Defendants to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendants.

22. In the case of Plaintiff, this apparent claim was false.

23. Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

24. Plaintiff has ever received any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiff's Images have caused Plaintiff to suffer substantial monetary damages and harm to reputation.

25. Further, in certain cases Defendants misappropriated Plaintiff's advertising ideas because the Images they misappropriated came from Plaintiff's own social media pages, which Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiff's Individual Background and Career***

26. Krupa is, and at all times relevant to this action was, a Polish American model, actress, and dancer. She was named the "Sexiest Swimsuit Model in the World" and has appeared on the cover of magazines such as Personal, Steppin' Out, Envy, Shape, FHM, Stuff, Inside Sport, Teeze, Maxim, and twice for Playboy. Krupa has also graced the covers of South African GQ, and the Polish editions of Cosmopolitan, InStyle, Glamour, and Grazia. Krupa was voted "Model of the Year" in Maxim's 2004-2005 German edition and was ranked #55 in Maxim's "Hot 100" 2011 edition and was voted "Model of the Year" in Maxim's 2004-2005 German edition. She has appeared on the cover of Playboy magazine twice, modeled for PETA, and founded an animal rescue group, Angels for Animal Rescue, with her friend Gabi Gutierrez. In addition, Krupa has

appeared in "The Underground Comedy Movie" (1999) (2010 re-issue), "Planet of the Apes" (2001), "The Man Show" (2002–2003), the action film "Max Havoc: Curse of the Dragon," (2004), "Las Vegas" episode "Degas Away with It" (2004), "CSI: Crime Scene Investigation" episode "Kiss-Kiss, Bye-Bye" (2006), "The Dog Problem" (2006), "Scary Movie 4" (2006), "Ripple Effect" (2007), "Skinner Box" (2007),the television show "Superstars" (June 2009), and in Season 9 of "Dancing with the Stars." (2009), "Szymon Majewski Show" (Polish TV talk show) (2010), Krupa was a cast member for the reality TV show "The Real Housewives of Miami" (2012–2013), "Ridiculousness" (2014), and has been the host and head judge in Poland's "Next Top Model" since 2010. She has over 1 million followers Facebook followers, over 1.8 million Instagram followers, and almost 811,900 Twitter followers.[1]

27. That we know of, Krupa is depicted in the photo in Exhibit "A" to promote Titillations on its Website. This Image was intentionally altered to make it appear that Krupa was either an employee working at Titillations, that she endorsed Titillations, or that she was otherwise associated or affiliated with Titillations.

28. Krupa has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

*Defendants' Business Activities and Misappropriation*

29. Defendants operate (or operated, during the relevant time period,) a so-called Gentlemen's Club, where they are (or were) engaged in the business of selling alcohol and food in an atmosphere where nude or semi-nude women entertain the business' clientele.

30. Defendants own, operate, and control Titillations's social media accounts, including its Facebook, Twitter, and Instagram accounts.

---

[1] In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

31. Defendants used Titillations's Facebook, Twitter, and Instagram accounts to promote Titillations's, and to attract patrons.

32. Defendants did this for their own commercial and financial benefit.

33. Defendants have used, advertised, created, printed, and distributed the Images of Plaintiff, as further described and identified above, to create the false impression with potential clientele that Plaintiff either worked at Titillations, endorsed Titillations, or was otherwise associated or affiliated with Titillations.

34. Defendants used Plaintiff's Images and created the false impression with the public that Plaintiff worked at or endorsed Titillations to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

35. Defendants were well aware that none of the Plaintiff have ever been affiliated with or employed by Titillations, and at no point have any of the Plaintiff ever endorsed Titillations or otherwise been affiliated or associated with Titillations.

36. All of Defendants' activities, including their misappropriation and republication of Plaintiff's Images, were done without the knowledge or consent of Plaintiff.

37. Defendants have never compensated Plaintiff for the unauthorized use of Plaintiff's Images.

38. Plaintiff have never received any benefit from Defendants' unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

39. It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

40. The fee that a professional model, like Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how

long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

41. Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

*Defendants' Misappropriation of Plaintiff's Images*

42. Defendants were aware that, by using Plaintiff's Images, they were violating Plaintiff's right to privacy, Plaintiff's right of publicity, and creating a false impression to potential customers that Plaintiff worked at or endorsed Titillations.

43. Unauthorized use of Plaintiff's Images deprives them of income they are owed relating to the commercialization of their Images.

44. In addition, Plaintiff allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Titillations.

45. At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiff's Images.

46. No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiff's Images.

47. No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Titillations's website, Twitter, Facebook, or Instagram accounts.

48. Defendants used Plaintiff's Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiff of her right to use her Images.

## FIRST CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)**

49. Plaintiff re-alleges each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

50. Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Plaintiff from the conduct described herein

51. Defendants used Plaintiff's image in order to create the false impression with the public that Plaintiff either worked at Defendants' establishment , or endorsed Defendants' businesses. This was done to promote and attract clientele to Defendants' establishment, and thereby generate revenue for Defendants.

52. Thus, this was done in furtherance of Defendants' commercial benefit.

53. Plaintiff is in the business of commercializing its identity and selling its images to reputable brands and companies for profit. Defendants' customers are the exact demographic that view Plaintiff's images in magazines and online. By virtue of Plaintiff's use of its image and identify to build its brand, it has acquired a distinctiveness through secondary meaning. Plaintiff's image either suggests the basic nature of its product or service, identifies the characteristic of its product or service, or suggest the characteristics of its product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, its brand – the reason their clients seek to hire them – is unique in that it is encompassed in its identity, i.e., their persona.

54. Both Plaintiff and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

55. As such, an unauthorized use of Plaintiff's image to promote an establishment created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Plaintiff. There is no doubt that Defendants used Plaintiff's image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and

unlawful use of Plaintiff's image and likeness was an existing intent to commercialize an interest in Plaintiff's image and likeness

56. Defendants' use of Plaintiff's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiff's fans and present and prospective clients into believing that Defendants'

57. establishment advertisements are endorsed by Plaintiff, or sponsored, approved or associated with Plaintiff.

58. Despite the fact that Defendants were at all times aware that Plaintiff neither worked at, nor endorsed their establishment, nevertheless, they used Plaintiff's image in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with Defendants' establishment.

59. Defendants knew that their use of Plaintiff's image would cause consumer confusion as to Plaintiff's sponsorship and/or employment at Defendants' establishment.

60. Upon information and belief, Defendants' use of Plaintiff's image did in fact cause consumer confusion as to Plaintiff's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

61. As a direct and proximate result of Defendants' actions, Plaintiff have no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Plaintiff's image, likeness and/or identity, or how Plaintiff's image, likeness and/or identity is being depicted by Defendants.

62. Further, any failure, neglect or default by Defendants will reflect adversely on Plaintiff as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiff to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiff.

63. Due to Defendants' unauthorized use of Plaintiff's image, Plaintiff has been damaged in an amount to be determined at trial.

64. WHEREFORE, Plaintiff respectfully request that the Court enter a judgment against Defendants and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## SECOND CAUSE OF ACTION
(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising)

65. Plaintiff re-alleges each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

66. Section 43 of the Lanham Act, 15 U.S.C. § 1125, et seq. applies to Defendants and protects Plantiff from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

67. Defendants used Plaintiff's image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiff worked at or were otherwise affiliated with Defendants' establishment, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use their image in order to advertise, promote, and market Defendants' businesses, Defendants' establishment, and/or Defendants' establishment events and activities.

68. Defendants' use of Plaintiff's image, likeness and/or identity to advertise, promote and market Defendants' businesses, Defendants' establishment, and/or Defendants' events and activities as described in this Complaint was false and misleading.

69. Defendants' unauthorized use of Plaintiff's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiff worked at or were otherwise affiliated with Defendants' establishment,

endorsed Defendants' businesses, Defendants' establishment or Defendant events or activities, or consented to or authorized Defendants' usage of its image in order to advertise, promote, and market Defendants' businesses or Defendant events and activities and/or that Plaintiff would participate in or appear at the specific events promoted in the advertisements.

70. Defendants' false advertising described above have the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendants' establishment, as to the general quality of attendees and participants of Defendants' establishment and in their events, as well as specifically whether Plaintiff worked at or were otherwise affiliated with Defendants' establishment, endorsed Defendants' businesses, Defendants' establishment or Defendant establishment events or activities, or consented to or authorized Defendants' usage of their image in order to advertise, promote, and market Defendants' businesses or Defendant establishment events and activities.

71. Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiff worked at or was otherwise affiliated with Defendants' establishment, endorsed Defendants' businesses, or Defendant establishment events and activities, or consented to or authorized Defendants' usage of its image in order to advertise, promote, and market Defendants' businesses or Defendant establishment events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendants' establishment, visit Defendants' establishment, and participate in events at Defendants' establishment and had a material effect and impact on the decision of members and prospective members and participants to join Defendants' establishment, visit Defendants' establishment and take part in the events at Defendants' establishment.

72. Defendants' unauthorized use of Plaintiff's image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Defendants' establishment and their activities and attracting clientele to Defendants' establishment.

11

73. Defendants knew or should have known that their unauthorized use of Plaintiff' image, likeness and/or identity would cause consumer confusion as described in this Complaint.

74. Defendants' unauthorized use of Plaintiff's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

75. Defendants' wrongful conduct as described herein was willful.

76. As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

77. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiff of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiff.

78. The method and manner in which Defendants used the image of Plaintiff further evinces that Defendants were aware of or consciously disregarded the fact that Plaintiff did not consent to Defendants' use of their image to advertise Defendants' businesses.

79. Defendants have caused irreparable harm to Plaintiff, its reputation and brand by attributing to Plaintiff the establishment lifestyle and activities at Defendants' establishment.

80. Defendants' unauthorized use of Plaintiff's image, likeness and/or identity directly and proximately caused and continue to cause damage to Plaintiff in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### (Misappropriation of Likeness)

81. Plaintiff re-alleges each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

82. Plaintiff have a right to control the commercial use of their names, images, and likenesses. Under New Jersey law, the unauthorized use of a person's image or likeness for a predominately commercial purpose is unlawful.

83. Defendants' use of Plaintiff's images and likenesses to advertise their business constitutes a use for commercial purposes.

84. Defendants' use of Plaintiff's photographs and likenesses did not occur in connection with the dissemination of news or information and was without a redeeming public interest or historical value.

85. Defendants never obtained Plaintiff's consent for the use of its image and likeness.

86. Defendants' use of Plaintiff's photographs and likenesses was willful and deliberate.

87. As a direct and proximate result of Defendants' scheme to create the false impression that Plaintiff was affiliated with and/or performed at Defendants' establishment, Defendants enjoyed increased revenues and profits.

88. As a further direct and proximate result of Defendants' deliberate and willful conduct, Plaintiff has suffered actual damages in an amount to be established at trial.

**FOURTH CAUSE OF ACTION**
**(Unfair Competition/False Endorsement N.J.S.A. 56:4-1, *et.seq.*)**

89. Plaintiff re-alleges each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

90. The aforesaid acts of Defendants' unauthorized use of Plaintiff's images and likenesses in connection with creating the false impression that they were affiliated with and endorsed Defendants' business constitutes unfair competition under N.J.S.A. 56:4-1.

91. As a direct and proximate result of Defendants' scheme to create the false impression that Plaintiff was affiliated with and/or performed at Defendants' establishment, Defendants enjoyed increased revenues and profits.

92. As a further direct and proximate result of Defendants' deliberate and willful conduct, Plaintiff has suffered actual damages in an amount to be established at trial.

93. Defendants' wrongful and deliberate conduct has caused significant damage to Plaintiff, both directly and indirectly, and Plaintiff respectfully request treble damages as authorized by N.J.S.A. 56:4-2.

### FIFTH CAUSE OF ACTION
### (Negligence/Respondeat Superior)

94. Plaintiff re-alleges each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

95. Plaintiff is further informed and believes and hereon alleges that Defendants maintains or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and nonconsensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

96. Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

97. Defendant owed a duty of care to Plaintiff to ensure that their advertising and promotional materials and practices did not infringe on its property and publicity rights.

98. Similarly, Defendants further owed a duty of care to Plaintiff to ensure that their promotional and/or advertising materials and campaigns did not deceptively or falsely portray a connection, affiliation, or sponsorship between Plaintiff and Defendants.

99. Defendants breached their duty of care to Plaintiff by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

100. Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and New Jersey law, were not violated. Defendants breached their duty of care to Plaintiff by their negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

101. Defendants' breach was the proximate cause of the harm Plaintiff suffered when its Image was published without consent, authorization, or compensation, and done so in a false, misleading and/or deceptive manner.

102. As a result of Defendants' negligence, Plaintiff has suffered damages in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION
### (Unjust Enrichment)

103. Plaintiff re-alleges each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

104. As set forth in detail above, Defendants published Plaintiff's Images in order to promote the Defendants' establishment to the general public and potential clientele.

105. Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiff were either entertainers working at or endorsed the Defendants.

106. Defendants' purpose in publishing Plaintiff's Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiff.

107. Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiff's Images.

108. Defendants have been enriched by their unauthorized control over, and publication of, Plaintiff's Image because said publication has assisted Defendants in attracting clientele to their establishment.

109.    Plaintiff has not been compensated for Defendants' commercial exploitation of its Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

110.    As such, Plaintiff have been damaged in an amount to be determined

## DEMAND FOR JURY TRIAL

Plaintiff demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiff respectfully request Judgment in their favor and against Defendants as follows:

(a)    For actual damages, in an amount to be determined at trial, relating to Plaintiff's Causes of Action;

(b)    For an order permanently enjoining Defendants from using Plaintiff's Images to promote Titillations's Strip Club;

(c)    For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117 and S.C. Code Ann. § 39-5-10, *et seq.*;

(d)    For all costs and attorneys' fees incurred by Plaintiff in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and S.C. Code Ann. § 39-5-10, *et seq.*;

(e)    For such other and further relief as the Court may deem just and proper.

|  |  |
|---|---|
| OF COUNSEL:<br>John V. Golaszewski, Esquire*<br>THE CASAS LAW FIRM, PC<br>1740 Broadway, 15th Floor<br>New York, New York<br>T: 646-872-3178<br>F: 855.220.9626<br>john@talentrights.law | /s/ Gerald B. Baldino, III<br>Gerald B. Baldino, III, Esquire<br>Attorney I.D. No. 295012019<br>SACCHETTA & BALDINO<br>24 S. Broad Street<br>Woodbury, NJ 08096<br>P: (856) 845-4400<br>F: (856) 845-0400<br>gbaldino@sbattorney.com<br>*Attorney for Plaintiffs* |

Dated: January 30, 2025

*Pro Hac Vice Application Forthcoming